| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| PATRICK NELSON,<br><br>        Plaintiff,<br><br>– against –<br><br>PARK CITY 3&4 APARTMENTS, INC., HIPOLITO ABREU, 32BJ SEIU, CHANDRA JAIN, DOES 1-10,<br><br>        Defendants. | **MEMORANDUM & ORDER**<br><br>16-CV-3533 (ERK) (RLM) |

KORMAN, J.:

  Defendant Park City 3&4 Apartments, Inc. (collectively with the two individual defendants, "Park City") employed plaintiff Patrick Nelson as a porter in its apartment buildings. Nelson was a member of the Service Employees International Union, Local 32BJ ("the Union"), and worked under the auspices of a collective-bargaining agreement ("CBA"). The latter was entered into by the Union and Realty Advisory Board on Labor Relations, Inc. ("RAB"), acting on behalf of owners of apartment buildings who, like Park City, became signatories to the agreement. *See* CBA at 1, ECF No. 78-1; ECF No. 30-3.

  Nelson asserts three categories of claims: First, he alleges that all the defendants violated various state statutes prohibiting racial discrimination in employment. Second, he alleges that all the defendants breached their obligations

1

under the CBA to protect him from discrimination. Third, he alleges that the Union breached its duty of fair representation.

## BACKGROUND

Nelson is a Black man of Trinidadian descent. Beginning in 2005, he worked as a porter in apartment buildings owned and managed by Park City. As a condition of his employment, Nelson was a member of Local 32BJ of the SEIU and worked under the auspices of the CBA.

From the beginning of his time with Park City, Nelson was subjected to racial harassment by several of his coworkers, including defendant Hipolito Antonio Abreu. Complaint ¶¶ 13–17, 27–28, ECF No. 1-3. When Nelson reported the harassment to management, including defendant Chandra Jain (Nelson's supervisor), Park City failed to remedy the situation, and retaliated against him for complaining. *Id.* ¶¶ 22–26, 32–44. Beginning in 2009, Nelson appealed to the Union about Park City and its employees on at least four separate occasions. *Id.* ¶¶ 32, 39, 53, 60.

Nelson commenced this suit by filing a complaint in New York Supreme Court (Kings County) on or about March 3, 2016 and filed an amended complaint soon thereafter. The amended complaint asserts claims under state discrimination laws and for breach of contract against all defendants and a claim against the Union for failure to provide fair representation. With the consent of all defendants, Park City then filed a notice of removal. Nelson and Park City were subsequently ordered

to mediate their disputes pursuant to the CBA, *see* ECF No. 47, but the mediation was unsuccessful, *see* ECF. No. 49.

There are currently four motions pending: (1) Nelson's motion to remand this case; (2) the Union's motion to dismiss for failure to state a claim; (3) Nelson's motion for leave to file a second amended complaint; and (4) Park City's motion to compel arbitration.

## ANALYSIS

I. *Nelson's Motion to Remand*

Nelson has moved to remand to state court on the ground that no federal claim appears on the face of the amended complaint. While Nelson's complaint does not expressly assert a federal right to relief, Nelson does charge that both Park City and the Union breached their obligations to him under the CBA. Those allegations fall within the narrow class of claims the Supreme Court has held to be *necessarily federal*—and therefore a basis for removal—regardless of whether any reference to federal law appears on the face of the complaint. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23–24 (1983). That doctrine of "complete preemption" applies where Congress acts with the intent to displace not only state *substantive* law, but any *cause of action* state law might provide to enforce it. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Once Congress does so, "any complaint that comes within the scope of the

3

federal cause of action necessarily 'arises under' federal law" for purposes of the relevant jurisdictional statutes. *Franchise Tax Bd.*, 463 U.S. at 24.

Here, Nelson's breach-of-contract claims are completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). It is hornbook law that § 301 renders any suit for violation of a collective-bargaining agreement "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in [its] absence." *Franchise Tax Board*, 463 U.S. at 23. A state law claim falls within § 301's preemptive scope if its resolution "is dependent on the interpretation of a CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262–63 (1994) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)). Nelson's contract claim satisfies that standard on its face. He alleges that the CBA obligated Park City and the Union "to protect him from discrimination," and they failed to hold up that bargain. Complaint ¶ 70.

Still, Nelson argues that this case requires only "consulting" the CBA rather than "interpreting" it and therefore may not be removed. Although the Second Circuit does recognize such a distinction, cases like Nelson's, which present a "claim for breach of the CBA," fall on the "interpretation" side of the divide. *See Wynn v. AC Rochester*, 273 F.3d 153, 157–59 (2d Cir. 2001). To resolve Nelson's contract claims will, at a minimum, require ascertaining: 1) Whether the CBA vests individual union members with the right to enforce its terms, and 2) What, if any, duty the contract imposes on the Union to respond to complaints of discrimination

against its members. Park City and the Union disagree with Nelson on both issues. *See Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 (1987) (finding a claim preempted by § 301 where "[i]n order to determine the Union's . . . liability . . . a court would have to ascertain, first, whether the collective-bargaining agreement in fact placed" the specific duty on the union that the plaintiff claimed was breached, "and, second, the nature and scope of that duty").

Because deciding this case will require more than mere "consultation" of the CBA, Nelson's contract claims against Park City and the Union are removable under § 1441(a). *See* 28 U.S.C. § 1441(a) (authorizing removal of cases "of which the district courts of the United States have original jurisdiction"). The remainder of Nelson's claims come within this court's supplemental jurisdiction because they grow out of the same nucleus of operative fact as the contract claims. 28 U.S.C. § 1367(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–165 (1997).

II.   The Union's Motion to Dismiss and Nelson's Motion to Amend

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

5

not suffice." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Exhibits attached to the complaint or incorporated by reference may be considered on a motion to dismiss. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Moreover, a court may consider a "document 'integral' to the complaint"—that is, a document whose "terms and effect" the complaint "relies heavily upon." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). In this case, although Nelson's complaint does not explicitly reference the applicable CBA, the complaint unquestionably "relies heavily upon its terms and effect." *Id.*

Nelson's complaint fails to plausibly state any claim for relief against the Union. With respect to Nelson's breach-of-contract claim, the Supreme Court has recognized that most collective-bargaining agreements do not contractually obligate unions to their members. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374–75 (1990). And while nothing prevents a collective-bargaining agreement from doing so if the parties so desire, Nelson cannot "point to language in th[is] collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." *Id.* at 274. Nor does Nelson have a claim to enforce the anti-discrimination provisions of the CBA against the Union as a third-party beneficiary. So situated, Nelson has no more rights to enforce those provisions than Park City does, *see id.* at 275, and Park City has none here. The anti-discrimination provisions of the CBA "are not promises by the Union

6

to [Park City]. They are, rather, concessions made by [Park City] to the Union," that Park City itself could not "enforce" by suing for breach. *Id.*

Nelson's complaint also asserts state-law discrimination claims against the Union. Yet as the Union argues, Nelson alleges no conduct on its part that, if true, constitutes unlawful discrimination. Insofar as it respects the Union, Nelson's complaint alleges only that he informed the Union about his experiences at Park City on a few occasions and that, on one of those occasions, his action "was a dead end." Complaint ¶ 32. Notably absent from Nelson's complaint are any alleged facts suggesting that the Union's actions were motivated by discriminatory animus, nor does Nelson argue otherwise in his opposition to the Union's motion. Thus, Nelson's complaint fails to move the Union's supposed liability to him under the relevant state anti-discrimination statutes past the realm of a "sheer possibility," and his state-law discrimination claims are therefore dismissed. *See Iqbal*, 556 U.S. at 678.

That leaves Nelson's claim for violation of the duty of fair representation, which, too, must be dismissed. All the violations that Nelson alleges in his first amended complaint fall outside the statute of limitations applicable to that claim. Nelson claims that Park City breached the CBA by discriminating against him and that the Union fell short of its duty to him by failing to adequately respond to Park City's breach of contract. Such claims, "hybrids" of a fair-representation claim against a union and a breach-of-contract suit against an employer, are subject to a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 154–55,

7

165 (1983). Since Nelson commenced his suit in state court on March 3, 2016, any claims that accrued earlier than September 3, 2015 are time-barred. Yet none of the amended complaint's allegations relating to the Union date from later than March of 2015. *See* Complaint ¶ 60

Nelson's proposed second amended complaint adds allegations that postdate September 3, 2015, but those allegations do not support a claim for relief. Nelson's proposed second amended complaint adds only two allegations about the Union's conduct: that it took no steps to prevent his termination in retaliation for filing this suit and that it took no steps to reverse his termination once it happened. Those allegations date to June 2016. Yet a union breaches its duty of fair representation only "when its conduct toward a member . . . is arbitrary, discriminatory, or in bad faith," *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001), and that standard cannot be met unless the member has requested the union's help in the first place. Because Nelson did not allege that he "ask[ed] the Union to process a grievance on this issue, [he] cannot complain that the Union failed to represent [him] properly." *Flanigan v. Int'l Bhd. of Teamsters*, 942 F.2d 824, 829 (2d Cir. 1991).

Nonetheless, the parties do not dispute Nelson has in fact filed a grievance regarding his termination, which the Union has taken to arbitration on his behalf. *See* ECF No. 52. This development, however, does not save Nelson's claim. If the Union is currently processing that grievance, a current claim for breach of the duty of fair representation with respect to that grievance "would be inefficient and

8

premature." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989) (internal quotation marks omitted). Indeed, when a union member complains that the Union denied him fair representation during grievance and arbitration proceedings, his claim accrues only once those proceedings produce a final result, *see Kalyanaram v. Am. Assoc. of Univ. Professors*, 742 F.3d 42, 46–47 (2d Cir. 2014). Because that condition is not met here, Nelson's motion to file an amended complaint is denied.[1]

### III. Park City's Motion to Compel Arbitration

Separate and apart from his claims against the Union, Nelson's complaint, as removed to this court, asserts claims against Park City for discriminating against him and failing to take any remedial action with respect to the racial harassment to which he was subject by employees of Park City. In his proposed amended complaint, Nelson adds the allegation that he was terminated shortly after he served his state-court complaint on Park City. Although the Union has commenced an arbitration on Nelson's behalf with respect to his termination, the Union did not seek to arbitrate

---

[1] Nelson may not amend his complaint as of right because he amended his complaint in state court. Applicable law provides that "[w]henever any action is removed . . . [a]ll . . . proceedings had in such action prior to its removal shall remain in full force and effect." 28 U.S.C. § 1450. Therefore, Nelson's instant request to amend his complaint is governed by subsection (a)(2) of Federal Rule of Civil Procedure 15, not subsection (a)(1). *See, e.g.*, *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002).

9

the underlying events about which he complained, and which are inextricably intertwined with his termination.

Park City argues that the CBA nonetheless requires Nelson to arbitrate his claims relating to those underlying events. In support, Park City invokes a number of the CBA's provisions, including the following "No Discrimination" provision:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. Section 1981, Family and Medical Leave Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations. *All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as sole and exclusive remedy for violations.* Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

CBA, art. XIX § 23(A) (emphasis added). Nelson alleges that Park City discriminated against him and subjected him to a hostile work environment in violation of the New York State Human Rights Law and the New York City Human Rights Code, and, in doing so, breached this contractual provision.

Park City argues that the italicized language above dictates that "the grievance and arbitration procedure" provided in "Articles V and VI" of the CBA is the "sole and exclusive remedy for" the wrongs Nelson complains of. *Id.* Nelson makes only one argument in response—specifically, because his claims relating to his experiences while working for Park City have not gone through the grievance

10

procedure described in Article V, they cannot be arbitrated under Article VI. That argument is without merit. Articles V and VI do not mandate that completion of the grievance procedure described in Article V is a prerequisite to arbitration as provided for in Article VI.

Article V provides that "[a]ny matter submitted to arbitration shall be *simultaneously* submitted to Joint Industry Grievance Committee," and that "[i]f the Committee meeting is not held before the arbitration date, *the meeting will be cancelled*." CBA, art. V §§ 5-6 (emphasis added). These provisions indicate not only that the grievance procedure need not be completed before arbitration begins but, moreover, that the procedure need not occur at all. Consistent with this understanding, the CBA provides that "[t]he grievance *may* first be taken up between a representative of management and a representative of the Union. If it is not settled, it may be filed for arbitration." CBA, art. V § 3 (emphasis added). The use of the permissive "may" suggests that the discussion of a grievance between a management representative and a union representative is not a prerequisite to commencing an arbitration.

While the Union and the RAB have an ongoing disagreement over whether a unionized employee working under this or a similar collective-bargaining agreement must bring a discrimination claim against his employer to arbitration where the Union has not arbitrated that claim on the employee's behalf, almost every judge in the Second Circuit that has considered this issue has rejected the Union's position

11

and compelled arbitration. *See, e.g.*, *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 410–411 (S.D.N.Y. 2016); *Glover v. Colliers Int'l NY, LLC*, No. 13-CV-8843, 2014 WL 5410016, at *4 (S.D.N.Y. Oct. 24, 2014); *Jenkins v. Collins Bldg. Servs., Inc.*, No. 10-CIV-6305, 2013 WL 8112381, at *3–4 (S.D.N.Y. Oct. 17, 2013). Significantly, those cases hold that, even if previous iterations of the applicable CBA comprised an unenforceable "substantive waiver of federally protected civil rights" in cases where the union declined to pursue an employee's discrimination claims in arbitration, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009), the addition of a clause entitled the "No-Discrimination Protocol," which expressly allows employees to arbitrate discrimination claims that the Union does not pursue, CBA, art. XIX § 23(B), alleviates that concern. *See Begonja*, 159 F. Supp. 3d at 410–411; *Glover*, 2014 WL 5410016, at *4; *Jenkins*, 2013 WL 8112381, at *3–4. Because I agree with the foregoing cases, and because Nelson does not address the merits of the issues discussed in those cases, there is no need to engage with the Union/RAB dispute in any more detail.

## **CONLUSION**

For the foregoing reasons:

1. Nelson's motion to remand this case is DENIED.

2. The Union's motion to dismiss Nelson's claims against it is GRANTED.

3. Nelson's motion to amend his complaint is DENIED.

4. Park City's motion to compel arbitration is GRANTED and this case is STAYED pending the completion of those arbitration proceedings. *See Roberts v. Petersen Invs.*, 214 F. Supp. 3d 237, 240 (S.D.N.Y. 2016) ("A stay in this case will permit prompt arbitral resolution of [the plaintiff's] claim and permit the parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation should judicial participation prove necessary." (alterations and internal quotation marks omitted)).

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York                                             Edward R. Korman
November 15, 2021                                      United States District Judge